IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JUSTIN MILLS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-15-0495 |
| ANNE ARUNDEL COUNTY, MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Justin Mills ("Plaintiff" or "Mills") brings this action against Defendants Anne Arundel County, Maryland (the "County"); Officer Douglas Bilter ("Officer Bilter") and Officer Kyle Shapelow ("Officer Shapelow") (collectively, the "Officer Defendants"); Anne Arundel County Police Department ("AACPD"); Christopher Coulter ("Coulter"), Giorgio Isella ("Isella");[1] The Cordish Companies, Inc. ("Cordish"); and PPE Casino Resorts Maryland, LLC d/b/a Maryland Live! Casino ("PPE Casino Resorts"), alleging violations of the United States Constitution, the Maryland State Constitution, and various claims arising under Maryland statutory and common law. Shortly after Plaintiff filed the present Second Amended Complaint (ECF No. 37), the Officer Defendants filed a Counterclaim against Plaintiff (ECF No. 41-1), alleging that Plaintiff violated Maryland's Wiretapping and Electronic Surveillance laws, Md. Code Ann., Cts. & Jud. Proc. § 10-402(a).

---

[1] The Plaintiff has failed to effect service of process upon the Defendants Coulter and Isella. No attorneys have entered their appearances on behalf of either Defendant, nor have Coulter and Isella filed any answer, motions, or other responsive documents. By separate Order of this date, this Court has issued a Show Cause Order requiring the Plaintiff to show good cause why this case should not be dismissed as to Coulter and Isella.

1

The parties' respective claims stem from an incident on February 21, 2014 at the Maryland Live! Casino in Anne Arundel County, Maryland, in which Mills was allegedly accused of "card-counting."

Presently pending are Defendant County's Motion to Dismiss the Second Amended Complaint (ECF No. 39); the Officer Defendants' Partial Motion to Dismiss the Second Amended Complaint (ECF No. 40); Defendant Cordish's Motion to Dismiss, or in the Alternative, for Summary Judgment, the Second Amended Complaint (ECF No. 47); and Plaintiff's Motion to Dismiss the Counterclaim (ECF No. 57). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). This Memorandum Opinion will address only the Defendants' respective Motions to Dismiss. Plaintiff's Motion to Dismiss the Counterclaim will remain pending.[2] For the reasons that follow, Defendant County's Motion to Dismiss the Second Amended Complaint (ECF No. 39) is GRANTED; the Officer Defendants' Partial Motion to Dismiss the Second Amended Complaint (ECF No. 40) is GRANTED; and Defendant Cordish's Motion to Dismiss, or in the Alternative, for Summary Judgment, the Second Amended Complaint (ECF No. 47), construed as a Motion to Dismiss, is GRANTED. All claims against the County and Cordish are dismissed, and only Count I will remain pending against the Officer Defendants.

BACKGROUND

At the motion to dismiss stage, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This case arises from the alleged unlawful detention, assault, and false imprisonment of Plaintiff Justin

---

[2] A hearing will be immediately scheduled with respect to this Motion.

Mills at the Maryland Live! Casino (the "Casino") in Anne Arundel County, Maryland. Second Amended Compl., ECF No. 39. On the evening of February 21, 2014, Mills alleges that he was playing blackjack when he was accused of "card-counting."[3] *Id.* ¶ 7. Defendant Coulter, an employee of PPE Casino Resorts, along with two security guards, allegedly instructed Mills to "come with us." *Id.* Defendant Isella, also an employee of PPE Casino Resorts, was allegedly present for the encounter and participated in Coulter's allegedly illegal detention. *Id.* ¶ 31. When Mills ignored Coulter's instruction and continued walking towards the exit, Coulter allegedly "stepped in front of him, blocking his egress." *Id.* ¶ 8. Plaintiff alleges that Coulter and one of the security guards then "grabbed" his arms, thereby preventing him from leaving the Casino. *Id.* Although he protested that he had "done nothing illegal," Coulter allegedly "assaulted the Plaintiff by grabbing the Plaintiff's arm and bending it forcefully behind his back in front of the general casino public[.]" *Id.* ¶ 9. Coulter then allegedly removed Mills to a "security holding room," which Mills states is not "ordinarily accessible to patrons[.]" *Id.*

In the security holding room, Coulter asked the Plaintiff to provide identification. *Id.* ¶ 10. Plaintiff refused, as he believes that the Casino intended to share his identification with other casinos "as part of their collective effort to maximize their gambling advantage by blackballing those who they think are able to count cards[.]" *Id.* ¶ 11. Coulter then "summoned" Anne Arundel County Police Officers Bilter and Shapelow to "force the

---

[3] Card-counting is a casino card game strategy wherein a blackjack player keeps a tally of all high and low value cards dealt thus far. *How Casinos Know That You Are Counting Cards*, The Huffington Post (May 12, 2015), http://huffingtonpost.com/quora/how-casinos-know-that-you_b_6857442.html (last visited May 31, 2016). The player is thus able to determine whether the next hand is likely to give the advantage to the player or the dealer. *Id.* Plaintiff alleges that card-counting is not illegal in Maryland or under federal law, however casinos dislike this strategy because it minimizes the inherent advantage of the dealer. Second Amended Compl. ¶ 11.

Plaintiff to produce his identification." *Id.* ¶ 12. Once the Officer Defendants arrived, Mills began to record the audio of their conversation with his cell phone. *Id.*

Mills alleges that Officers Bilter and Shapelow, acting under color of law and within the scope of their employment, continued to question him for thirteen additional minutes. *Id.* ¶ 13. This detainment, Mills claims, was illegal and against his will. *Id.* Officers Bilter and Shapelow allegedly threatened him with arrest if he did not produce his identification. *Id.* When Plaintiff stated that he had no intention of leaving the Casino, the Defendant Officers allegedly said that Casino employees suspected that he was counting cards. *Id.* ¶ 14. The Defendant Officers allegedly believed that such a practice was illegal in Maryland. *Id.* However, Plaintiff asserts that card-counting is not illegal in Maryland or under federal law, thus the Officer Defendants were mistaken. *Id.* ¶¶ 14-15.

Ultimately, Mills alleges that, due to the threat of arrest and "coerced by Coulter's unlawful detention," he gave the Officer Defendants his passport. *Id.* ¶ 17. Coulter then allegedly provided Mills with an "eviction" letter, explaining that "as a consequence of [Mills's] actions, [his] permission to be on the premises of Maryland Live! Casino is hereby revoked." *Id.* ¶ 18. The letter further stated that he was to forfeit any winnings. *Id.* Plaintiff was thus allegedly unable to "cash in his chips." *Id.* ¶ 19. He was then escorted from the Casino premises. *Id.* Following these events, Plaintiff allegedly received a letter from the Casino banning him permanently. *Id.* ¶ 20.

Plaintiff subsequently filed the present action seeking compensatory damages of $500,000 and punitive damages of $1,000,000, among other relief. In the subject Second Amended Complaint, he asserts seven claims for relief: violations of the United States

4


Constitution and the Maryland Declaration of Rights (Count I);[4] negligence (Count II);[5] common law assault (Count III);[6] false arrest and false imprisonment (Count IV);[7] false light (Count V);[8] negligent hiring and retention (Count VI);[9] and civil conspiracy (Count VII).[10] The Officer Defendants then filed a Counterclaim against Plaintiff (ECF No. 41-1), alleging that Plaintiff violated Maryland's Wiretapping and Electronic Surveillance laws, Md. Code Ann., Cts. & Jud. Proc. § 10-402(a). Only the County, the Officer Defendants, and Cordish have since moved to dismiss, whether partially or in its entirety, the Second Amended Complaint.

STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

---

[4] Count I is asserted against all Defendants.
[5] Count II is asserted against Defendants Cordish, PPE Casino Resorts, Coulter, and Isella.
[6] Count III is asserted against Defendants Cordish, PPE Casino Resorts, Coulter, Isella, Officer Bilter, and Officer Shapelow.
[7] Count IV is asserted against Defendants Cordish, PPE Casino Resorts, Coulter, Isella, Officer Bilter, and Officer Shapelow.
[8] Count V is asserted against Defendants Cordish, PPE Casino Resorts, Coulter, Isella, Officer Bilter, and Officer Shapelow.
[9] Count VI is asserted against Defendants Cordish, PPE, Coulter, and Isella.
[10] Count VII is asserted against Defendants Cordish, PPE Casino Resorts, Coulter, Isella, Officer Bilter, and Officer Shapelow.

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true the factual allegations contained in the complaint, the court is not so constrained when the factual allegations are conclusory or devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Moreover, a court need not accept any asserted legal conclusions drawn from the proffered facts. *Iqbal*, 556 U.S. at 678. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.  Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 584 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

## ANALYSIS

**A. The County's Motion to Dismiss**

In Count I, the sole claim asserted against the County, Plaintiff alleges that the County's failure to educate and train its officers caused the alleged violations of his federal and state constitutional rights.[11] Second Amended Compl. ¶¶ 28-29. The County, in turn, moves to dismiss on the grounds that Plaintiff's allegations are insufficient to plead a plausible failure-to-train claim for which relief may be granted. Section 1983 creates a private

---

[11] In practical terms, claims brought pursuant to the Article 24 of the Maryland Declaration of Rights—the due process clause of the State Constitution—are analyzed in accordance with the Fourteenth Amendment of the Constitution. *Murphy v. Edmonds*, 601 A.2d 102, 107-108 (Md. 1992); *see also Williams v. Prince George's Cnty.*, 685 A.2d 884, 895 (Md. Ct. Spec. App. 1996). As such, this Court's ruling with regards to Plaintiff's federal constitutional claims will apply equally to any claims asserted under the Maryland Constitution.

right of action for any United States citizen seeking to remedy alleged constitutional violations. 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 does not create "substantive rights;" rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, Civ. A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

A municipality or local government may be held liable under § 1983 if it itself "subjects" the plaintiff or "causes [the plaintiff] to be subjected" to some deprivation of rights. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 438 U.S. 658, 692 (1978)). Municipalities and local governments are not vicariously liable under § 1983 for the actions of their employees. *Monell*, 438 U.S. at 691. Rather, they are liable solely for "their *own* illegal acts." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 438 U.S. at 665-683) (emphasis in original). Liability of a municipality thus arises only where the employees' unconstitutional actions are taken in furtherance of a municipal policy or custom. *Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009).

Yet, as the United States Supreme Court has explained, only in "limited circumstances" will "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights . . . rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. Indeed, the local government's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion)). In light of the "tenuous" nature of this claim, the local government's "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] came into contact.'" *Connick*, 563 U.S. at 61 (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)).

To satisfy this "stringent standard of fault," *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997), municipal "policymakers [must be] on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]" *Connick*, 563 U.S. at 61 (citing *Brown*, 520 U.S. at 407). Anything less than a showing of deliberate indifference "would result in *de facto respondeat superior* liability on municipalities . . . ." *Canton*, 489 U.S. at 392. Generally, a plaintiff bringing a failure-to-train claim must show "a pattern of similar constitutional violations by untrained employees . . . to demonstrate deliberate indifference[.]" *Connick*, 563 U.S. at 62 (internal citation omitted). Absent such a showing, the plaintiff must demonstrate a "high degree of predictability" that the alleged training deficit "led directly to the very consequence that was so predictable." *Brown*, 520 U.S. at 409-10. In other words, the constitutional violations must be "patently obvious" for § 1983 liability to attach. *Connick*, 563 U.S. at 64; *see also Whitley v. Prince George's*

9

*Cnty., Md.*, Civ. A. No. PWG-12-3428, 2013 WL 3659949, at *8 (D. Md. July 11, 2013) (explaining that a plaintiff must do more than provide conclusory "boilerplate" to state a plausible claim for relief under § 1983).

In this case, Plaintiff's sole allegations with respect to the County are that it failed its supposed "responsibility to educate officers regarding gaming laws" and also to "educate and properly train the officers[,] demonstrate[ing] a clear indifference to the needs of the community *vis a vis* law enforcement and other responsibilities of Anne Arundel County police in and around the casino." Second Amend. Compl. ¶¶ 28-29. When "officers who have contact with casinos lack the simplest training on gaming laws and their enforcement," Mills claims that "[c]onstitutional violations can only be expected[.]" *Id.* ¶ 29. Such allegations, however, fall far short of the "stringent" standard of deliberate indifference. Plaintiff does not allege a pattern of unconstitutional actions, but instead relies on the sole incident on February 21, 2014. The unconstitutional actions thus must be "patently obvious" to sustain a claim for failure to train under § 1983. *Connick*, 563 U.S. at 64. Mills merely asserts that constitutional violations are "expected," but beyond this conclusory statement, he provides no facts in support. It is thus unclear how County officials could be on notice, actual or constructive, that the County training of police officers was inadequate with respect to gaming laws.

Mills argues in response that the County's argument essentially requires that he *prove* his failure-to-train claim, which is not the appropriate standard at the motion to dismiss stage. He contends that discovery will reveal the facts necessary to his claim. While Plaintiff is correct that he need not prove his claim at this stage, he must allege at least a *plausible*

claim for relief. Under *Iqbal* and *Twombly*, he cannot simply rely on the mere possibility that he could later establish his claim. *McCleary-Evans*, 780 F.3d at 584 (4th Cir. 2015). His claim thus must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, Mills's allegations amount only to a *possible* failure-to-train claim. As such, Count I must be dismissed against the County.

### B. Officer Defendants' Partial Motion to Dismiss

The Officer Defendants move to dismiss Counts III, IV, V, and VII of the Second Amended Complaint on two grounds.[12] First, the Officer Defendants are entitled to statutory immunity for acts performed within the scope of their employment without malice. In the alternative, the Officer Defendants argue that Plaintiff has failed to state a claim for relief in each Count. As the Officer Defendants are entitled to statutory immunity under Maryland law, this Court need not consider the sufficiency of each separate claim.

In Maryland, "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority [is] immune as an official or individual from any civil liability for the performance of the action. Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1). This statutory grant of immunity extends to police officers. *Owen-Williams v. City of Gaithersburg*, Civ. A. No. 8:10-cv-0185-PJM, 2011 WL 53082, at *5 (D. Md. Jan. 7, 2011), *appeal dismissed*, 435 F. App'x 232 (4th Cir. 2011). As this Court has previously explained, a plaintiff demonstrates "actual malice" with facts indicating "that the officials intentionally performed an act without legal justification or excuse, but

---

[12] The Officer Defendants have not moved to dismiss Count I asserted against them for constitutional violations.

11

with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Id.* (citing *Elliott v. Kupferman*, 473 A.2d 960, 969 (Md. Ct. Spec. App. 1999)); *see also Davis v. DiPino*, 637 A.2d 475, 479 (Md. Ct. Spec. App. 1994), *rev'd on other grounds*, 655 A.2d 401 (1995) (stating that a plaintiff must include factual allegations of actual malice to defeat the defendant's invocation of statutory immunity).

The Second Amended Complaint fails to plead facts sufficient to show actual malice on behalf of the Officer Defendants. Mills specifically alleges that the Officer Defendants were acting in a discretionary capacity within the scope of their employment during their alleged encounter with the Plaintiff. Second Amended Compl. ¶ 4. Yet, the Second Amended Complaint is devoid of any reference to actual malice. In fact, Mills specifically alleges that the Officer Defendants acted "under the misimpression that card counting is illegal." *Id.* ¶ 15. Mills thus is asserting that the Officer Defendants were mistaken, and not that they "intentionally performed an act without legal justification or excuse, . . . with an evil or rancorous motive influenced by hate[.]" *Owen-Williams*, 2011 WL 53082, at *5. If the Officer Defendants were acting under a mistaken belief, then they could not also have acted "deliberately and willfully" to injure the Plaintiff. *Id.* As Plaintiff offers no argument in response, he has failed to plead facts sufficient to defeat the Officer Defendants' statutory immunity. Accordingly, Counts III, IV, V, and VII are dismissed with regards to Officers Bilter and Shapelow.[13]

---

[13] This Court again notes that the Officer Defendants have not moved to dismiss the constitutional claims of Count I. Pursuant to 42 U.S.C. § 1983, Mills alleges in Count I that the Officer Defendants, acting under color of law, "detained, and denied [Mills] the opportunity to leave without reasonable suspicion or probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and the Maryland Declaration of Rights[.]" Second Amended Compl. ¶ 24. The United States Court of Appeals for the Fourth Circuit has explained that § 1983 incorporates common law torts, such as false imprisonment, so

12

### C. Cordish's Motion to Dismiss

Finally, Defendant Cordish argues that, as it possesses no ownership interest in the Casino, it cannot be held liable for the alleged incidents on the evening of February 21, 2014. Plaintiff has thus failed to state any claim for which relief may be granted. As a preliminary matter, this Court notes that the parties present arguments under both the motion to dismiss standard of review, Rule 12(b)(6), and the summary judgment standard of review, Rule 56. Generally, when a district court, in its discretion, considers matters outside the pleadings, the effect is to convert the motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment. Fed. R. Civ. P. 12(d); *Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 211 (D. Md. 2013). The court, however, may properly take "judicial notice of matters of public record . . ." and consider those documents in reviewing a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). At this stage in the proceedings, it is not necessary for this Court to consider materials other than the pleadings or matters of public record. Cordish's Motion will thus be considered only under Rule 12(b)(6).

On September 3, 2015, Cordish filed its corporate disclosure statement pursuant to Local Rule 103.3 (D. Md. 2014). Notice of Corporate Disclosure, ECF No. 43. Although this document is external to the pleadings, this Court takes judicial notice of the statement as a matter of public record. *Philips*, 572 F.3d at 180. In the statement, Cordish disclosed that it

---

as to create a "'special species of tort liability,' founded on rights originating in the Constitution[.]" *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Officers Shapelow and Bilter have offered no arguments to dismiss the constitutional claims at this stage in the case, thus Count I will remain pending.

13

"has no parent or affiliate entities." Notice of Corporate Disclosure at 1. As such, Cordish does not "own[] and operate[]" the Casino or PPE Casino Resorts, nor are there any allegations beyond this mere assertion that "Cordish acted jointly with the other co-Defendants." Second Amended Compl. ¶ 6. Plaintiff claims that Cordish is "liable for the actions of the Maryland Live! Casino personnel in this case," yet this conclusory legal allegation is insufficient to attach liability where no ownership is present. Plaintiff has thus failed to state a claim for relief against Cordish.

## CONCLUSION

For the reasons stated above, Defendant County's Motion to Dismiss the Second Amended Complaint (ECF No. 39) is GRANTED; the Officer Defendants' Partial Motion to Dismiss the Second Amended Complaint (ECF No. 40) is GRANTED; and Defendant Cordish's Motion to Dismiss, or in the Alternative, for Summary Judgment, the Second Amended Complaint (ECF No. 47), construed as a Motion to Dismiss, is GRANTED. All claims against the County and Cordish are dismissed, and only Count I will remain pending against the Officer Defendants.

A separate Order follows.

Dated: May 31, 2016                                _____/s/_____
                                                    Richard D. Bennett
                                                    United States District Judge