Hon. Richard D. Bennett, via CMECF
Re: Mills v. PPE Casinor Resorts Maryland, LLC, et al; Case No. 1:15-cv-00495-RDB
Plaintiff's discovery dispute letter.

Dear Judge Bennett:

      The request and the response at issue are attached as exhibit 1. Also, attached as exhibit 2 is a response to a separate interrogatory explaining the recording of events by Plaintiff. In this answer, Plaintiff states under penalty of perjury that the entire audio recorded at Maryland Live! as described in the answer is complete and identical to the audio which was on his now broken and discarded phone when it was saved to his computer. A full playable download of this file was provided to the defendant. Simply, the sole device that created the audio recording of the occurrence could not be provided, but the copy that was saved from this device was provided.

      Since this dispute was initiated, the depositions of Bilter, Shapelow, and Coulter were completed this week. Bilter and Shapelow were asked to authenticate the YouTube video with the audio and video combined, and both confirmed that there was nothing missing or added, and the recording represents all that was seen from the angle of the camera, and all that was said was accurately represented on the audio. Coulter confirmed that all occurrences, audio and video, seen on the YouTube video likewise accurately represented what was said and what occurred. Plaintiff, too, authenticated the video and audio. Everyone involved in the case agrees that all the events audio recorded by the Plaintiff occurred, and no one, including Bilter's attorney, has identified anything said that is absent from the audio produced. Lastly, where there appears some audio distortion on the audio, it is identified in ex. 3, and consists of brief muffling of some discourse by Coulter and a Maryland Live! security officer while they are distant from Plaintiff during the recording.[1] Exhibit 3 also includes an update of the audio transcript, and each were provided to Bilter,.

      The item requested is Plaintiff's personal computer. Plaintiff regularly communicates with his attorneys via email from this device. Plaintiff offered up the computer with the caveat that he first delete his private files unrelated to the current matter, which offer was categorically refused. Instead, Bilter's attorney proposes that he be allowed to forensically examine the computer applying, through software, the complete mirror imaging of the data storage on the computer. Plaintiff also offered a download of the files comprising the .wav files described in the interrogatory. Again, Bilter's attorney categorically refused this request. Also, Plaintiff requested a designation of the software Bilter proposed to use in invading his computer, and, again, Bilter's attorney refused. At that point, concessions ceased being made, and Plaintiff stated that the matter should proceed to the court.

---

[1] "[I]t appears that the audio commenced mere seconds after the Caucasian security officer stops speaking. Thereafter, the video commences with Coulter, at a distance where he is off screen, and we briefly speak to each other before he leaves. The ensuing silence is deleted. Later, there is some conversation with the Caucasian security officer on the recording continuing to the point where he tells me to "be quiet," for a second time with which I comply as is evident on the video. The ensuing silence was deleted, with communication resuming when Bilter states, "What's goin' on man?"

Forensic inspection of another party's computer is a "drastic discovery measure." *McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001). It is also incumbent upon the party making the request to "explain[ ] . . . why it should be allowed to conduct a physical inspection of [a party's] computer hard drive(s)." *Id*. Moreover, through less intrusive discovery means, Bilter had every opportunity to discover all that it could gain through the "drastic discovery measure" sought.  If Bilter said anything beyond that which appears on the audio, he already knows it. If he didn't say something that appears on the audio, he knows that too. Same for the other parties and persons who were available for discovery without the imposition of a "drastic discovery measure." Instead, Bilter and the other parties confirm the accuracy of the audio recording. This is a tempest in a teapot, and even the tempest is contrived. Obviously, the unwavering demand by Bilter will cause the disclosure of privileged attorney/client communications, and likely voluminous protected work product as well, concerning communications with counsel. Clearly, this is unauthorized.

Thus, the request is overly broad and overly burdensome. The facts here are relatively straightforward, and expansive discovery comprising years of Plaintiff's personal computer use is an untoward invasion on his privacy, and a production far beyond anything calculated to lead to the discovery of relevant evidence.

Bilter seems to claim that the device making the recording is somehow relevant even when there is no question concerning the authenticity of the recording or the truth of its content. In this age of digital recording, the phone upon which Plaintiff recorded the conversations is analogous to a classic reel-to-reel tape recorder. Conversely, it is the same as a camera taking a picture. An examination of the tape recorder or an examination of the camera does nothing to affect an authenticated and agreed accurate recording or photo, and is not itself evidence.

Production of swaths of information laying bare the subject's life apart from the litigation is not appropriate. Institution of tort litigation "is not an 'open sesame' into the victims private [matters]." *Lauer v. A/S Meyers Tankrederi*, 39 F.R.D. 334, 335 (E.D. Pa. 1966). This is true where, like here, the information is available by less intrusive means, and especially true where that discovery has already occurred. Moreover, the device on which the audio was created was disclosed, and it is not Plaintiff's personal computer. The device on which the video was created was disclosed as the Maryland Live! surveillance system divorced from the Plaintiff. Plaintiff has sworn that the digital copies provided contain the digital information recorded, except for deleted silence which is evident as silence on the video provided by Maryland Live!.

In closing, the person who is requesting this intrusive and drastic discovery invasion has acknowledged that the audio and video recordings of him truly and accurately represent his actions and words without omission or alteration. The current request is just an attempt by Bilter to burden this litigation in direct contradiction of the precepts found in Fed. R. Civ. P. 1, and appears for the purpose of oppressing and harassing the Plaintiff. The request should be denied.

| | |
|---|---|
| /S/ *Abraham Fernando Carpio*         | /S/ *Robert A. Nersesian*          |
| Abraham Fernando Carpio | Robert A. Nersesian |
| Attorney for Plaintiff/Local Counsel | *Pro hac vice* Attorney for Plaintiff |