IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUSTIN MILLS,

    Plaintiff - Counter-Defendant,

v.

PPE CASINO RESORTS
MARYLAND, LLC, et al.,

    Defendants - Counter-Plaintiffs.

Civil Action No.: RDB-15-495

\* \* \* \* \* \* \* \* \* \* \* \*

# MEMORANDUM OPINION

This Memorandum Opinion addresses plaintiff - counter-defendant Justin Mills' ("plaintiff" or "Mills") Motion for Summary Judgment on the Counterclaims filed by defendants - counter-plaintiffs Officer Douglas Bilter ("Bilter") and Officer Kyle Shapelow ("Shapelow") (collectively, the "Officers") and by defendant – counter-plaintiff Christopher Coulter.[1] ("Mills' Motion") (ECF No. 113.) The Counterclaims allege that Mills violated Maryland's Wiretapping and Electronic Surveillance Act ("Maryland Wiretap Act"), Md. Code, Cts. & Jud. Proc., § 10-401, *et seq.*, by surreptitiously recording the Officers' and Coulter's oral communications during Mills' interaction with them in an enclosed, not-publically-accessible location of the Maryland Live! Casino (the "Casino") on February 21, 2014. (ECF No. 41-1.) The parties' submissions have been reviewed, and no hearing is

---

[1] Mills' Motion also seeks entry of Summary Judgment on his affirmative claims against defendants. This Memorandum Opinion does not address Mills' own claims against defendants.

necessary.² *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated below, Mills' Motion (ECF No. 113) is GRANTED as to Shapelow and Bilter's Counterclaim (ECF No. 41) and as to Coulter's Counterclaim (ECF No. 89).  Summary judgment shall be ENTERED in favor of Mills on both Counterclaims.³

## FACTUAL BACKGROUND

In ruling on a Motion for Summary Judgment, this Court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

On February 21, 2014, plaintiff Justin Mills was playing blackjack at the Maryland Live! Casino, located in Anne Arundel County, Maryland.  (ECF No. 122-1 at ¶ 1.)  Casino personnel approached plaintiff while he was on the casino floor.  (ECF No. 113-1 at ¶ 4.)  The Casino employees requested that plaintiff leave the casino floor with them.  (*Id.* at 5.)  Plaintiff began to walk with the Casino employees, but then paused.⁴  (*Id.* at ¶ 7.)  One Casino employee grabbed plaintiff by the arms, and the group of Casino employees then escorted Mills to a secured, back hallway, not visible from the casino floor.  (ECF No. 122-1 at ¶ 3; ECF No. 113-1 at ¶ 9.)

---

² While no hearing has been conducted on the Motion for Summary Judgment, this Court notes that several of the issues raised in the parties' papers were addressed previously during the June 16, 2016 Motions Hearing on Mills' Motion to Dismiss Bilter and Shapelow's Counterclaim.  (ECF No. 76.)

³ To the extent that the Officers have cross-moved for summary judgment on their Counterclaim, the Motion is DENIED.  (ECF No. 122.)  Defendant Coulter has not cross-moved for summary judgment on his Counterclaim.  (ECF No. 123.)  Mills' Motion as to his affirmative claims against all defendants REMAINS PENDING.  Defendants' Motions for Summary Judgment as to Mills' claims also REMAINS PENDING.

⁴ A video of these events has been filed with the Court.  (ECF No. 114.)  Plaintiff also published the video to YouTube at: https://www.youtube.com/watch?v=jBdk1yG2pmU (last accessed April 26, 2017).

Once the Casino employees had escorted Mills to the secured, back hallway, they accused him of card counting and demanded his identification in order to ban him from the Casino.[5] (ECF No. 122-1 at ¶ 3.) Plaintiff refused to produce identification. (ECF No. 113-1 at ¶ 10.) Subsequently, defendants Bilter and Shapelow—Anne Arundel County Police Officers working secondary employment at the casino—were summoned to the secured hallway. (ECF No. 122-1 at ¶ 4.) The Officers confronted Mills and demanded that he produce identification; Mills initially refused. (ECF No. 113-1 at ¶ 13; ECF No. 122-1 at ¶ 12.) Officer Bilter then stated to Mills that: "You can't leave here unless we I.D. who you are. So, either you can give 'em your I.D., or you can go with us and we can fingerprint you, find out who you are, and then we'll release you."[6] (ECF No. 113-1 at ¶ 13; ECF No. 122-1 at ¶ 16.)

After further conversation and approximately four minutes into the encounter, Mills produced his passport as identification to the Officers. (ECF No. 122-1 at ¶ 22.) The Officers reviewed Mills' passport and then handed the passport to Casino employees Giorgio Isella[7] and Christopher Coulter. (ECF No. 113-1 at ¶ 16; ECF No. 122-1 at ¶ 14.) The video reflects that Coulter transcribed plaintiff's identification information. (ECF No. 114.) At the Officers' instruction, plaintiff stated his home address, which also appears to

---

[5] A video of these events has been filed with the Court. (ECF No. 114.) Plaintiff also published the video to YouTube at: https://www.youtube.com/watch?v=LlMexfd2e8s (last accessed April 26, 2017).

[6] The Officers' argument that Mills' audio recording is inadmissible in this Court based on § 10-405(a) of the Maryland Wiretap Act, which prohibits the use of unlawful wiretap evidence in Maryland courts, is without merit. *See United States v. Blank*, WDQ-14-10448, 2015 WL 4041408, at *8 (D. Md. June 30, 2015), *aff'd,* 659 F. App'x 727 (4th Cir. 2016) ("It is unnecessary for the Court to analyze whether [defendant's] actions violated the Maryland statutes. Federal law governs the admissibility of evidence in federal prosecutions. As a result, evidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings without regard to state law.") (internal citations omitted).

[7] Plaintiff voluntarily dismissed his claims against Giorgio Isella on September 28, 2016. (ECF No. 95.)

have been transcribed by Coulter. (*Id.*) Defendant Coulter then read and issued to plaintiff a notice banning him the Casino premises. (ECF No. 122-1 at ¶ 23.)

The encounter in the secured, back hallway was recorded by Casino video surveillance. (ECF No. 122-1 at 2; ECF No. 114.) Mills, the Officers, and between two and six Casino employees[8] are visible in the hallway throughout the video. (ECF No. 113-1 at ¶ 18.) Using an iPhone concealed in his pants pocket, plaintiff created an audio recording of the encounter in the hallway. (ECF No. 122-1 at ¶¶ 24, 26.) Plaintiff did not inform any of the individuals in the room that he was creating an audio recording. (*Id.* at ¶ 27.) Plaintiff later obtained a copy of the Casino's video surveillance footage. (ECF No. 122-1 at ¶ 30.) Mills then merged the Casino video footage with his iPhone audio recording to create a hybrid audio/video clip, which he posted on YouTube.[9] (*Id.* at ¶¶ 31-32.)

## PROCEDURAL BACKGROUND

Mills filed his original Complaint in this Court on February 20, 2015. (ECF No. 1.) The now-operative Second Amended Complaint was filed, with leave of Court, on August 6, 2015. (ECF No. 37.) Following this Court's Memorandum Opinion and Order dated May 31, 2016, only Mills' constitutional claims against Officer Bilter, Officer Shapelow, Christopher Coulter, and PPE Casino Resorts Maryland, LLC remain at issue in this case. (ECF Nos. 67, 68.)

---

[8] The number of Casino employees visible in the hallway varies, as these individuals moved around (or, possibly, outside the room) during the video. The Casino employees include Coulter, Isella, and several unidentified individuals (who have never been parties to this case).

[9] https://www.youtube.com/watch?v=LlMexfd2e8s (last accessed April 26, 2017).

4

On September 1, 2015, Officers Bilter and Shapelow filed an Answer and Counterclaim against Mills alleging that he violated Maryland's Wiretapping and Electronic Surveillance Act, Md. Code, Cts. & Jud. Proc., § 10-401, by surreptitiously recording their communications at Maryland Live! Casino on February 21, 2014. (ECF No. 41.) Mills moved to dismiss the Officers' Counterclaim on September 25, 2015. (ECF No. 57.) Following a hearing on June 16, 2016, this Court denied Mills' Motion to Dismiss the Counterclaim. (ECF Nos. 76, 77.) As stated on the record, additional discovery was needed in order to ascertain the facts underlying the Counterclaims. (*Id.*)

Defendant Christopher Coulter filed a separate Counterclaim against Mills on August 12, 2016, also alleging violations of the Maryland Wiretap Act. (ECF No. 89.) Mills moved to dismiss Coulter's Counterclaim on September 27, 2016.[10] (ECF No. 93.)

On February 21, 2017, Mills filed the now-pending Motion for Summary Judgment. (ECF No. 113.) On April 1, 2017, Officer Bilter and Shapelow and defendants Coulter and PPE Casino Resorts filed separate cross-motion for summary judgment. (ECF Nos. 122, 123.) These matters are ripe for this Court's adjudication.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty*

---

[10] That Motion will be DENIED AS MOOT in light of the result reached herein.

5

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Where, as here, both parties have filed motions for summary judgment, this Court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (internal quotation marks omitted). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

## DISCUSSION

Mills raises three broad arguments in support of his Motion for Summary Judgment on the Officers' Counterclaim. (ECF No. 113-1 at 18-24.) He first argues that the communications at issue were not private—and, therefore, outside the scope of the Maryland Wiretap Act—on account of the presence of multiple individuals in the place where the recording occurred. (*Id.* at 18-19.) Second, Mills asserts that his surreptitious recording was a privileged act of self-defense for which he may not be held liable. (*Id.* at 20-24.) Finally, he maintains that "[t]here exists an absolute constitutional privilege to record the actions of police officers undertaking their duties…" (*Id.* at 25.)

In opposition to Mills' Motion, the Officers argue that an individual's reasonable expectation of privacy is based not on the presence of other persons, but rather on the location of the conversation. (ECF No. 122-1 at 14-15.) Thus, the Officers assert, they reasonably expected that their conversation was private because it occurred in the secured, back hallway of the Casino. (*Id.*) The Officers also challenge Mills' assertion of the self-defense privilege to vindicate his actions. (*Id.* at 15-16.) Finally, the Officers argue that while the First Amendment protects the right to record audio in a public location, that right does not extend to private spaces, such as the secured hallway. (*Id.* at 16-17.)

Maryland's Wiretapping and Electronic Surveillance Act generally prohibits the willful interception, disclosure, and use of impermissibly intercepted communications. Md. Code Ann., Cts. & Jud. Proc. § 10-402(a). Section 10-410 of the Act creates a civil remedy for persons whose communications were illegally intercepted, disclosed, or used. Md. Code Ann., Cts. & Jud. Proc. § 10-410. Under the Act, oral communication is defined as "any

7

conversation or words spoken to or by any person **in private conversation**." Md. Code Ann., Cts. & Jud. Proc. § 10-401(13)(i) (emphasis added). The term "private conversation" is not defined in the act. *See* § 10-401. However, in determining whether an individual had a reasonable expectation of privacy, Maryland courts follow the familiar *Katz* standard, which asks (1) whether the individual had an actual, subjective expectation of privacy with regard to the statements and (2) whether that expectation is "one that society is prepared to recognize as 'reasonable.'" *Malpas v. State*, 116 Md. App. 69, 84, 695 A.2d 588, 595 (1997) (quoting *Fearnow v. Chesapeake & Potomac Tel. Co. of Maryland*, 342 Md. 363, 376, 676 A.2d 65, 71 (1996)).[11] *See Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring). This Court has explained in the context of the related federal wiretap act, 18 U.S.C. § 2510, *et seq.*, that "[a] person's reasonable expectation of privacy is a matter to be considered on a case-by-case basis, taking into consideration its unique facts and circumstances." *Benford v. Am. Broad. Co.*, 649 F. Supp. 9, 11 (D. Md. 1986) (quoting *Benford v. ABC,* 554 F. Supp. 145, 154 (D. Md. 1982)).

In this case, neither the Officers nor Coulter had a reasonable expectation of privacy regarding their conversations with Mills. Even if they *subjectively believed* the conversation to be private because the encounter occurred in the secured, back hallway of the Casino, the

---

[11] The Officers argue that *Fearnow* guarantees a right to jury trial on the question of a party's reasonable expectation of privacy under the Wiretap Act. (ECF No. 132 at 2.) They rely on a statement in that decision that, "whether a violation of the Wiretap Act occurred hinges on a jury determination that at least one of the parties had a reasonable expectation of privacy." *Fearnow*, 342 Md. At 376, 676 A.2d at 71. Nevertheless, it is well-established that, under *Katz*, the Court—not the jury—is charged with determining whether a person had a "reasonable expectation of privacy." *See generally United States v. Breza*, 308 F.3d 430, 433 (4th Cir. 2002) (conducting de novo review of the district court's legal determination that defendant's reasonable expectation of privacy was not offended by police conduct). Moreover, if the above quoted language in *Fearnow* were interpreted as broadly as the Officers urge, then a jury trial would be guaranteed *in every case alleging a violation of the act*, no matter how outrageous or unreasonable the alleged expectation of privacy. Such a result cannot have been the intention of the General Assembly (or the Maryland Court of Appeals), and is, as noted, inconsistent with the Maryland courts' endorsement of the *Katz* standard.

presence in the hallway of up to nine (9) individuals of three distinct status—Mills, the police officers, and the Casino employees—makes any such expectation manifestly unreasonable. *See Katz*, 389 U.S. at 351 ("For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *Smith v. Maryland*, 442 U.S. 735, 743–44, 99 S. Ct. 2577, 2582, 61 L. Ed. 2d 220 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."); *Greenberg v. State*, 421 Md. 396, 404, 26 A.3d 955, 960 (2011) (attorney-client privilege may be waived by disclosure of confidential information to third parties). *See also Holland v. Prot. One Alarm Monitoring, Inc.*, 2016 WL 1449204, at *10 (W.D. Wash. Apr. 13, 2016) (speech in the presence of multiple employees at staff meeting not 'private conversation' within meaning of state wiretap statute); *State v. Rollins*, 363 N.C. 232, 237, 675 S.E.2d 334, 337 (N.C. Supreme Ct. 2009) ("The circumstances in which the communication takes place, including the physical location and presence of other individuals, have been relevant when answering the question: "Has the veil of confidence been removed ...?"); *People v. Osorio*, 75 N.Y.2d 80, 84, 549 N.E.2d 1183, 1185 (N.Y. 1989) ("Generally, communications made between a defendant and counsel in the known presence of a third party are not privileged.").

The circumstances surrounding Mills' surreptitious recording also defeat the Officers and Coulter's claim to a reasonable expectation of privacy. As this Court has explained, "[o]ne of the clear purposes of the Maryland Act is to prevent, in non-criminal situations, the unauthorized interception of conversations where one of the parties has a reasonable expectation of privacy." *Benford*, 554 F. Supp. at 151. In this case, the Officers, who had

9

been "moonlighting" as paid security personnel for the Casino, entered the secured, back hallway in order to perform official, police duties. That the Officers were acting in their official capacity is evident from their threat to transport plaintiff to the station for fingerprinting and identification. As Bilter stated: "You can't leave here unless we I.D. who you are. So, either you can give 'em your I.D., or you can go with us and we can fingerprint you, find out who you are, and then we'll release you." (ECF No. 113-1 at ¶ 13; ECF No. 122-1 at ¶ 16.) Similarly, Coulter, acting as a Casino security official, could not reasonably expect that his reproachful communications with a Casino patron were entitled to any sort of privacy: the communications were neither solicited by Mills nor entered into with any reasonable expectation that Mills would maintain Coulter's privacy. *Compare Huff v. Spaw*, 794 F.3d 543, 553 (6th Cir. 2015) (wife speaking with husband in hotel room did have reasonable expectation of privacy, even though husband inadvertently exposed conversation through mobile phone "pocket-dial"). Acting in these capacities, the Officers and Coulter had no reasonable expectation of privacy in their communications with Mills.

Furthermore, nothing which the Officers or Coulter said in the secured, back hallway remotely involved their 'private lives,' so as to give rise to an expectation of privacy. *See generally* Restatement (Second) of Torts § 652D (a tortious invasion of privacy occurs when a person "gives publicity to a matter concerning the private life of another…").[12] Simply stated, the privacy interests which the Maryland Wiretap Act's civil remedy seeks to protect were not at all present in the circumstances underlying Mills' actions, defeating any claim that

---

[12] Maryland courts follow the Restatement (Second) of Torts in evaluating privacy tort claims. *See Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161, 502 A.2d 1101, 1115 (1986).

10

the Officers or Coulter had a reasonable expectation of privacy. *See Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 606 (7th Cir. 2012).[13]

As the communications which Mills recorded were not, as a matter of law, "private conversations," they are not within the scope of the Maryland Wiretap Act, and Mills is not liable for the alleged violations. Accordingly, summary judgment must be entered in favor of Mills on the Officers' Counterclaim (ECF No. 41) and on Coulter's Counterclaim (ECF No. 89).

With respect to the Officers' Counterclaim, moreover, Mills would also be entitled to summary judgment based on his First Amendment privilege to record police officers performing their official duties. As a threshold matter, the fact that the Officers were performing their official duties is readily apparent from Bilter's admonition that he would transport Mills to the police station and fingerprint him if Mills refused to produce identification to the Casino. (ECF No. 113-1 at ¶ 13; ECF No. 122-1 at ¶ 16.) That Mills had a First Amendment right to record these activities is well-supported by relevant caselaw. Indeed, as this Court noted in *Garcia v. Montgomery Cty., Maryland*: "based on the fairest reading of Supreme Court precedent, and the great weight of authority from other circuits, it seems fairly well-settled in 2015 that there is a First Amendment right to video record police officers as they carry out their public duties." *Garcia v. Montgomery Cty., Maryland*, 145 F. Supp. 3d 492, 509 (D. Md. 2015). *See also* United States Department of Justice Statement of

---

[13] As the United States Court of Appeals for the Seventh Circuit stated in *Alvarez*: "("[B]y making it a crime to audio record *any* conversation, even those that are *not* in fact private—the State has severed the link between the eavesdropping statute's means and its end. Rather than attempting to tailor the statutory prohibition to the important goal of protecting personal privacy, [the State] has banned nearly all audio recording without consent of the parties—including audio recording that implicates *no* privacy interests at all."). 679 F.3d at 606.

Interest in *Sharp v. Baltimore City Police et al.,* BEL-11–2888 (ECF No. 24 at 1), 2012 WL 9512053 (D. Md. 2012).[14]

Among the authorities cited in *Garcia* is *Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014), a decision of the United States Court of Appeals for the First Circuit. In *Gericke*, the court held that the First Amendment permits a citizen to record a traffic stop, so long as the recording does not interfere with the performance of the police activity. *Id. Gericke* followed the First Circuit's earlier decision in *Glik v. Cunniffe*, where the court explained that, "[e]nsuring the public's right to gather information about their officials not only aids in the uncovering of abuses, but also may have a salutary effect on the functioning of government more generally." *Glik v. Cunniffe,* 655 F.3d 78, 82–83 (1st Cir. 2011) (citing *Mills v. Alabama,* 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)). *See also Am. Civil Liberties Union of Illinois v. Alvarez,* 679 F.3d 583, 605 (7th Cir. 2012) (police officers have no reasonable expectation of privacy in speech made in public places at volume audible to bystanders). While this case, as the Officers note, is distinct from *Glik* and *Alvarez* in that the recording was made in a private place, the interest in uncovering possible abuses is of heightened importance in a situation like that now before this Court, in which an individual was transported, against his will, to a concealed space from which he was not free to leave and where he is grossly outnumbered by adverse individuals.

This Court, like others which have addressed the issue, recognizes that the right to record police conduct in a private place may be curtailed in many situations. *See, e.g., Gericke*,

---

[14] "The right to record police officers while performing duties in a public place, as well as the right to be protected from the warrantless seizure and destruction of those recordings, are not only required by the Constitution. They are consistent with our fundamental notions of liberty, promote the accountability of our governmental officers, and instill public confidence in the police officers who serve us daily." *Sharp,* BEL-11–2888 (ECF No. 24 at 1), 2012 WL 9512053.

753 F.3d at 7. However, on the facts presented in this case, this Court identifies no reason why Mills' First Amendment rights should be so limited. Accordingly, even if Mills' surreptitious recording were within the scope of the Maryland Wiretap Act—which it is not—he would be entitled, in the alternative, to summary judgment on the Officers' Counterclaim on the basis of his First Amendment privilege.

In sum, this Court concludes as a matter of law that the Officers and Coulter had no reasonable expectation of privacy in their conversations with Mills in the secured, back hallway of the Casino. As the communications which Mills recorded were, thus, not "private conversations," they are not within the scope of the Maryland Wiretap Act, and Mills is not liable for the alleged violations. Accordingly, summary judgment must be entered in favor of Mills on the Officers' Counterclaim (ECF No. 41) and on Coulter's Counterclaim (ECF No. 89).[15]

## CONCLUSION

For the reasons stated above, Mills' Motion (ECF No. 113) is GRANTED as to Shapelow and Bilter's Counterclaim (ECF No. 41) and as to Coulter's Counterclaim (ECF No. 89). Summary judgment shall be ENTERED in favor of Mills on both Counterclaims.

A separate Order follows.

Dated: May 8, 2017

                                                                          /s/
                                                  Richard D. Bennett
                                                  United States District Judge

---

[15] Moreover, as noted herein, even if Mills were not entitled to summary judgment on the Officers' Counterclaim on this basis, his actions are protected under the First Amendment. Accordingly, Mills alternatively would be entitled to summary judgment on the Officers' Counterclaim based on this privilege.

13