# EXHIBIT 2

**EXHIBIT 2**

Michael A. Hodge and Associates, LLC
145 West Lake Pass
Newnan, GA. 30263

---

December 26,
2016

To: David M. Trojanowski
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
Suite 305
600 Baltimore Avenue
Towson, MD 21204

Re: Mills v. PPE Casino Resorts

**Preface**

This expert report is written in accordance with methodology used by Forensic Consultants rendering opinions within the private security industry. Based on my expertise in the security industry and qualifications to testify (detailed further below and in my CV attached); you have asked me to review the evidence in the case to date and to render a written opinion to address these questions:

1) Did Maryland Casino Live Security operate within the standards of care with respect to Mr. Mills?

2) Did Maryland Casino Live conspire to Anne Arundel Police to violate Mr. Mills Civil Rights?

**Facts and Circumstances**

On February 21, 2014; Plaintiff Lawrence Mills was an invitee to the Maryland Live Casino in Anne Arundel, Maryland. At approximately 2356 hours, surveillance office was notified by a Floor Supervisor (Jason Yeager) of Lawrence Mills being a known "advantage" player. Such activity is not permitted on the premises.

Hence, Mills status as an "Advantage" player was confirmed in the Casino's system. Thereafter, a Manager and Supervisor approached Mills to escort him to a hallway to receive his identification and receive an "Eviction" notice from the premises.

Surveillance camera video shows Mr. Mills reluctance to follow security personnel to a hallway outside the public's presence. The camera footage also shows security personnel using minimal escort procedures to guide Mr. Mills to the hallway.

It's the escort of Mr. Mills while on the premises that appears to be the subject of the Plaintiff's complaint.

**Materials Relied upon**

The following is a list of materials relied upon in reaching my opinions.

1. YouTube Video (Re: Escort of Mills from Premises)
2. Plaintiff's Complaint
3. Plaintiff's Responses To Def. Interrogatories
4. Casino Incident Full Report
5. Casino Eviction Notice for Lawrence Mills
6. Maryland Live Casino Standard Operating Procedures
7. Maryland Live Casino Responsible Gaming Plan
8. Phone recording Transcript (Mills Mobile Phone)
9. ASIS International Physical Security Guidelines
10. ASIS Protection of Assets Manual on Physical Security
11. The FBI Bureau of Investigation Bulletin: Policing the Gaming Environment – Kenneth Peak, Phd

<u>**Duty of Care**</u>

On February 21, 2014; Plaintiff Lawrence Mills was an invitee to the Maryland Live Casino in Anne Arundel, Maryland. As an invitee within the standards of care in the security industry; Mr. Mills was owed a duty of reasonable from foreseeable risks of harms and as an invitee; that duty is subject to revocation by those who control the premises.

Because the Casino had a system that recorded violators of its policies, staff of Maryland Live was able to determine that Mr. Mills could be evicted from the premises.

Upon an eviction by security staff; to comply with the standards of care within the security industry, it must be done with reasonable care under the circumstances.

In this matter, it's clear from review of video footage that the only contact upon Mr.

Mills was Security tucking their hand under Mr. Mill's arms and guiding him to the hallway which minimizes public exposure.

Hence, this escort was reasonable and within the standards of care for the security industry involving the immediate environment.

Further, at all times; Staff and personnel of Maryland Casino Live acted in accordance with its internal policies and the law, and did not breach its duty of care to Mr. Mills as all such activities comports with security industry standards, guidelines, customs and practices.

### No Assault by Maryland Casino Live Staff upon Mr. Mills

There are no facts in this case to support that Security in this matter inflicted offensive contact upon Mr. Mills at any time.

In the security industry, the purpose of placing one's hand under the armpit as done to Mr. Mills, is to guide the person to a particular area. The video footage confirms this activity. Opposed to the allegations by the Plaintiff, the video footage does not indicate Mr. Mills arm being violently and/or physically thrust behind his back.

In the security industry, the arm-pit guide is used as it assists someone like Mr. Mill where to go; especially when he is resisting as he admitted too in this matter. Also, from a public standpoint, other patrons do not know if such a person is being assisted because of medical purposes or inebriation which is common for this environment.

Accordingly, the slight contact made to Mr. Mills by security staff was reasonable under the circumstances and was not done in a manner to offend Mr. Mill's sense of dignity.

### No False arrest or False Imprisonment by Maryland Casino Live Staff upon Mr. Mills

Foremost, there are no facts in this matter to support that Maryland Casino Live Staff executed an arrest or false imprisonment upon Mr. Mills.

At all times, security staff acted reasonably by trying to evict Mr. Mills from the premises expeditiously. The video footage in this matter supports this. It was Mr. Mills who refuse to leave the floor and the premises.

Staff acted in accordance with their policies and procedures to obtain information from Mr. Mills to complete the eviction notice. There are no facts to support that security detained Mr. Mills and bounded him to a particular area for an unreasonable amount of time; nor did inform him at any time her wasn't free to leave.

Accordingly, the escort from the floor to the hallway was done in a very reasonable time period and at no time did staff use handcuffs, a bounded areas, or physical restraints to keep Mr. Mills on the premises. Again, the staff simply attempted to get Mr. Mills Identification for the sole purpose of the eviction and nothing else.

Moreover, there are facts to support that Mr. Mills remained on the premises and in the presence of security to build a civil case against the Casino.

As part of my review in this matter, I reviewed audio transcribed from Mr. Mills telephone as Mr. Mills covertly taped Security's attempt to obtain Mr. Mills identification. Also, from the initial moment security requested Mr. Mills to follow them to a non-public area, Mr. Mills made several statements to making a case against the casino independent of any real claims inflicted by Casino staff.

### No False Light by Maryland Casino Live Staff upon Mr. Mills

As mentioned above, at all times Security staff conduct was reasonable and within the standards of care in making sure that Mr. Mills eviction was not opened to public exposure within the Casino.

The facts are clear as the video footage security approached Mr. Mills and attempted to expeditiously escort him to an area outside the public's view for further action of obtaining information for the eviction form. Security did not yell, shout, or engage in a physical confrontation to achieve its purposes under their policies.

Further, the procedure to move a patron to a hallway or backroom is a reasonable security measure to prevent any public scrutiny of a patron.

### No Negligent Hiring and Retention of Security Staff

The claim that any Maryland Casino Live Security Staff was negligently hired or retained is without merit.

Foremost, the Casino has a very detailed policy and procedures manual. There standards of operating procedures is reasonable according to the standards in the security industry. In addition to other measures, the manual is very detailed especially how to evict a patron upon its premises.

Moreover, there are no facts to support that the security staff activities on February 21, 2014 falls below any hiring or training standard within the security industry.

### No Violation of Mr. Mills Civil Rights or Conspiracy with the Police

Mr. Mills Complaint alleges a conspiracy with the Police and Security Staff to violate the civil rights with Mr. Mills.

The facts are clear the Security Staff of Maryland Casino Live in no way train, agree upon, or work together in their prospective employment role. Also, there are no facts to support that Security staff serves as an arm of the Maryland Government or Anne Arundel Police.

Accordingly, Maryland Casino Live Standard Operating Procedures is clear as it identifies is requirement to have police officers respond and address violations of Maryland Law.

Hence, Maryland Casino Live request from assistance from the Anne Arundel police is a reasonable security measure recognized and implemented by the private security industry and does not assume any agreement by Security Staff and Police to violate the rights of any citizen using the Casino.

### Opinions

Based on my review of the materials in this case and consideration of best practices in the industry, I have formed opinions. I reserve the right to alter such opinions should additional information become available. prior to the time of trial. I hold these opinions to a reasonable degree of certainty within the field of private security:

It is my opinion that Defendants Maryland Casino Live and its employees:

1)   Did not breach any standards of care owed to the Plaintiff.

2)   At all times used reasonable to evict Mr. Mills from its premises.

3)   At all times respected the civil rights of Mr. Mills.

4)   Did not conspire with Anne Arundel Police to violate any civil rights of Mr. Mills.

The basis and reasons for my opinion(s) are premised upon my education, training, experience, and knowledge of the security industry customs, practices, standards, analysis and study in the field, through consulting professional literature, through seminars, and the facts of the case presented and materials reviewed. Specifically, my experienced includes Board certification in Security Management, retired from the U.S. Secret Service after 20 years of service, Professor of Security Management, published author in the Security Industry, Former Chairman of the ASIS Crime and Loss Prevention Council, Certified Facility Security Officer,

Certified law Enforcement Trainer, and a security professional who has conducted over 100 surveys of premises and established security plans for various premises and environments.

      I proffer these opinions based upon the experience, education, and training above, and reserve the right to modify such opinions if additional information is provided.

Sincerely,


Michael A. Hodge, CPP, JD