IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JUSTIN MILLS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-15-495 |
| PPE CASINO RESORTS MARYLAND, LLC, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

This Memorandum Opinion addresses the parties' Cross-Motions for Summary Judgment (ECF Nos. 113, 122, 123) as to Count I (42 U.S.C. § 1983 Liability) and Count IV (False Imprisonment) of plaintiff's Second Amended Complaint (ECF No. 37). This Court conducted a Motions Hearing on the parties' Cross-Motions on June 27, 2017. (ECF No. 142.) While this Court rendered its decisions as to Counts II, III, V, VI, and VII on the record,[1] it reserved judgment on Counts I and IV and took these matters under advisement. (ECF Nos. 143, 144.)

For the reasons stated below, plaintiff Justin Mills' Motion for Partial Summary Judgment (ECF No. 113) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to defendants PPE Casino Resorts Maryland, LLC ("PPE") and Coulter's

---

[1] During the hearing, this Court denied Mills' Motion for Summary Judgment as to Count III (Assault) and granted PPE and Coulter's Motion for Summary Judgment as to Counts V (False Light) and VII (Civil Conspiracy). Count VI (Negligent Hiring and Retention) was dismissed by agreement of counsel. This Court also ruled that Counts II (Negligence) and III (Assault) would proceed to trial. (ECF No. 144.)

1

false imprisonment liability (Count IV), and it is DENIED as to defendants' § 1983 liability (Count I). Summary judgment shall be ENTERED on liability in favor of Mills on Count IV (False Imprisonment). In addition, defendants Bilter and Shapelow's Motion for Summary Judgment (ECF No. 122) is DENIED. Finally, defendants' PPE and Coulter's Motion for Partial Summary Judgment (ECF No. 123) is DENIED IN PART.

Based on the foregoing and the prior decisions of this Court, the following claims shall proceed to trial beginning on September 5, 2017: Count I (§ 1983 liability – Bilter, Shapelow, PPE, Coulter); Count II (Negligence – PPE and Coulter); Count III (Assault – PPE and Coulter).

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent factual and procedural background is set forth in this Court's May 8, 2017 Memorandum Opinion (ECF No. 133) and incorporated herein by reference.[2]

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the

---

[2] *Mills v. PPE Casino Resorts Maryland, LLC*, RDB-15-495, 2017 WL 1862474 (D. Md. May 8, 2017). There, this Court noted the undisputed fact that the Officers were "moonlighting"—working secondary employment—at Maryland Live! Casino. *Id.* at *5.

2

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Where, as here, both parties have filed motions for summary judgment, this Court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (internal quotation marks omitted). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

## DISCUSSION

### I. Plaintiff's Claims Under 42 U.S.C. § 1983 (Count I)

#### a. Defendants Bilter and Shapelow Are Not Entitled to Qualified Immunity

Defendant Officers Bilter and Shapelow argue that they are entitled to summary judgment on Count I, the sole claim against them, because they are entitled to qualified immunity based on their official actions. (ECF No. 122-1 at 11-12, ECF No. 132 at 8-12.) Specifically, Bilter and Shapelow assert that because they entered the secured, back hallway with a "reasonable suspicion" that Mills was illegally counting cards, their misunderstanding of the legal status of card counting and of Mills' actions does not subject them to liability under § 1983. (*Id.*)

The United States Court of Appeals for the Fourth Circuit has explained that, "[q]ualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Henry v. Purnell*, 501 F.3d 374, 376–77 (4th Cir. 2007) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). "Because **an official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity**, the defendant bears the initial burden of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *Henry*, 501 F.3d at 377, n. 2 (emphasis added). *See Drury v. Dziwanowski*, MJG-15-3845, 2017 WL 1153890, at *4, n. 4 (D. Md. Mar. 28, 2017) ("Although Maryland police officers are entitled to qualified immunity when performing their official duties, they lose such protection when

4

they commit 'an intentional tort or act [ ] with malice.'"); *Ashton v. Brown*, 339 Md. 70, 117, 660 A.2d 447, 470 (1995) ("When a peace officer goes beyond the scope of the law he may become liable civilly and is not shielded by the immunity of the law.") (internal citation omitted).

While Officers Bilter and Shapelow might have been entitled to qualified immunity when they first entered the secured, back hallway for the purpose of investigating a crime they (even mistakenly) believed Mills to have committed, their acts and statements which followed indicate that they were not carrying out their official duties, but instead were serving the private interests of the casino, their secondary employer.[3] Almost immediately after confronting him, Officer Bilter stated to Mills that he was being detained in order to allow the casino to identify him and ban him from the premises. (Cam565 at 0:36-1:20; ECF No. 114.)[4] While Bilter did state that the casino had accused Mills of illegally card counting, Bilter's stated purpose in speaking with Mills was not the investigation of this alleged crime. Officer Shapelow's subsequent statement also indicates that the officers were not investigating an alleged crime: "**We are not accusing you of doing any wrongdoing**. We're telling you that we need your I.D.—either you're gonna give us your I.D. or we gotta

---

[3] The supplemental authority cited in the Officers' July 7, 2017 letter (ECF No. 145), *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017), which dealt with officers acting pursuant to a facially valid warrant, is of no bearing on the facts presented in this case.

[4] As already noted in this Court's May 8, 2017 Memorandum Opinion and applicable again here, the Officers' argument that Mills' audio recording is inadmissible in this Court based on § 10-405(a) of the Maryland Wiretap Act, which prohibits the use of unlawful wiretap evidence in Maryland courts, is without merit. *See United States v. Blank*, WDQ-14-10448, 2015 WL 4041408, at *8 (D. Md. June 30, 2015), *aff'd,* 659 F. App'x 727 (4th Cir. 2016) ("It is unnecessary for the Court to analyze whether [defendant's] actions violated the Maryland statutes. Federal law governs the admissibility of evidence in federal prosecutions. As a result, evidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings without regard to state law.") (internal citations omitted). Moreover, this Court determined in its May 8, 2017 Memorandum Opinion that Mills' surreptitious audio recording did not violate the Maryland Wiretap Act. (ECF No. 133.)

5

find your I.D. That's what we're here for." (*Id.* at 1:50-1:59) (emphasis added.) Notably, moreover, the officers did not issue any citation to Mills or file any police report following the incident. It is thus clear that the officers had abandoned any investigative or law enforcement purpose and were acting for the casino's private purposes only in their interactions with Mills.[5] Accordingly, they are not entitled to qualified immunity and may be liable under § 1983.

### b. Defendants PPE and Coulter Qualify As State Actors Under § 1983 and Applicable Case Law

PPE and Coulter argue that they are entitled to summary judgment as to Count I because they are not "state actors" for purposes of § 1983. (ECF No. 121-2 at 4-6.) While PPE and Coulter properly note that "merely calling the police for assistance does not rise to the level of state action necessary to impose liability under § 1983," the record before this Court reflects that their actions with Officers Bilter and Shapelow were much more than a mere call for assistance. (*Id.* at 5.) Rather, the undisputed facts before this Court indicate that PPE and Coulter were directing the actions of Officers Bilter and Shapelow so as to render them joint participants in the officers' official actions. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 1605–06 (1970) ("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941, 102 S. Ct. 2744, 2756 (1982) ("[W]e

---

[5] While the officers did threaten to use their official powers—i.e., to take Mills to the station to identify him—they did not do so for any public or law enforcement purpose. It is precisely this use of public authority for a private purpose which plaintiff's claims target.

have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."). *See also Horowitz v. Cont'l Cas. Co.*, No. 16-1883, --- Fed. App'x ---, 2017 WL 908217, at *2 (4th Cir. Mar. 7, 2017); *Jackson v. Pantazes*, 810 F.2d 426, 429 (4th Cir. 1987).

In reaching this conclusion, this Court notes in particular Officer Shapelow's deposition testimony, during which he states that PPE employee Coulter is the person who "gives [him] directions and assignments" while he is working at Maryland Live!. (Shapelow Dep. at 33-35, ECF No. 127-4 at 9-10.) That the officers were working to carry out a private goal of PPE is also clear in Officer Bilter's statement to Mills in the secured back hallway: "You can't leave here unless we I.D. who you are. **So, either you can give 'em your I.D.**, or you can go with us and we can fingerprint you, find out who you are, and then we'll release you." (ECF No. 114 at 1:03-1:11) (emphasis added.) Thus, PPE and Coulter were jointly engaged in Bilter and Shapelow's official actions towards Mills and may be liable as state actors under § 1983.

This Court notes that PPE and Coulter do not assert that they are entitled to qualified immunity based on these acts. Even if they had asserted that they were entitled to qualified immunity, they would not be entitled to such protection. *See Gregg v. Ham*, 678 F.3d 333, 340 (4th Cir. 2012) ("If '[h]istory does not reveal a firmly rooted tradition of immunity' and the policy considerations underlying qualified immunity do not apply to the category of private persons of which the defendant is a part, then he is not entitled to qualified immunity.'") (quoting *Richardson v. McKnight,* 521 U.S. 399, 404, 117 S.Ct. 2100 (1997)). Based on these

7

principles and the facts of this case, this Court perceives no basis on which it would afford PPE, a casino operator, and Coulter, its employee, qualified immunity.

### c. There Remain Genuine Issues of Material Fact Which Preclude Entry of Summary Judgment on the § 1983 Claims

While this Court finds that all defendants may be liable under § 1983, there remain genuine issues of material fact which preclude entry of summary judgment on these claims. Specifically, it remains for a jury to determine whether defendants' demand for Mills' passport and turning over of the passport to casino personnel violated Mills' Fourth Amendment rights. *See United States v. Stover*, 808 F.3d 991 (4th Cir. 2015), *cert. denied,* 137 S. Ct. 241 (2016). In addition, there exists a genuine issue of material fact as to whether Mills' detention was effectuated by the officers (defendants Bilter and Shapelow), by the casino (defendants PPE and/or Coulter), or by the officers and the casino acting in concert.[6] Finally, in the event that a jury finds that defendants violated Mills' civil rights, it remains for them to determine the nature and extent of Mills' injuries.

Accordingly, plaintiff's Motion for Summary Judgment (ECF No. 113) is DENIED IN PART, Bilter and Shapelow's Motion for Summary Judgment (ECF No. 122) is DENIED, and PPE and Coulter's Motion for Summary Judgment (ECF No. 123) is DENIED IN PART. Plaintiff's § 1983 claims against all defendants shall proceed to trial.

### II. Plaintiff's False Imprisonment Claim (Count IV) Against Defendants PPE and Coulter

Plaintiff Mills moves for summary judgment on his false imprisonment claim (Count IV) against defendants PPE and Coulter. (ECF No. 113-1 at 12-13.) Plaintiff argues that

---

[6] This Court's legal determination in Part I(b) that PPE and Coulter could be liable as joint participants in the deprivation of Mills' civil rights does not necessarily mean that a jury will find them liable.

8

when the casino personnel seized him and detained him in the back hallway, they had no legal justification for doing so and did so without his consent. (*Id.*)

PPE and Coulter argue in opposition that plaintiff is unable to show that defendants intended to deprive Mills of his liberty and, moreover, that Mills was neither handcuffed nor expressly told that he could not leave the secured, back hallway. (ECF No. 121-2 at 3-4.) Notably, PPE and Coulter do not argue that they had a legal justification for detaining Mills; indeed, they did not have any legal justification for doing so. The act which they accused Mills of committing—card counting—is not illegal under Maryland law when done through one's mental acuity alone. COMAR 36.05.03.13 (prohibiting the use of mechanical means in tracking the probabilities of a table game). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1131 (9th Cir. 2012) (describing card counting as a "legal technique"); *Hoagburg v. Harrah's Marina Hotel Casino*, 585 F. Supp. 1167, 1170 (D.N.J. 1984) ("Card counting is not a crime.").

As Judge Hollander of this Court recently noted, "[i]n Maryland, the tort of false imprisonment is largely identical to the tort of false arrest." *Jones v. Chapman*, ELH-14-2627, 2017 WL 2472220, at *23 (D. Md. June 7, 2017) (citing *Okwa v. Harper,* 360 Md. 161, 189-190, 757 A.2d 118, 133 (2000) ("Although the intentional torts of false arrest and false imprisonment are separate causes of action, they share the same elements.")). "The elements of the tort of false imprisonment are as follows: "1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification. Any exercise of force, or threat of force, which deprives the plaintiff of his or her liberty is an imprisonment." *Jones*, 2017 WL 2472220, at *24 (internal citations omitted).

Contrary to PPE and Coulter's arguments, there is no genuine issue of material fact as to Coulter's intent to deprive Mills of his liberty. The first casino security video which shows Coulter and several casino security personnel escorting Mills through the casino floor and, then, grabbing Mills arm and placing Mills in a security hold plainly evidences Coulter's intent to deprive Mills of his liberty. (Cam425 and Cam445 at 0:54-1:42; ECF No. 114.)

With respect to defendants' argument regarding Mills' freedom to leave, the first security video reflects that Coulter and the other casino personnel did not permit Mills to walk away from them and their intended destination. (*Id.*) Similarly, the second security video indicates that Mills was not free to leave the secured, back hallway. While Mills was not handcuffed, he was confronted by between two and eight casino employees, Bilter, and Shapelow, police officers working secondary employment for the casino. (Cam565; ECF No. 114.) Casino security personnel stood between Mills and the doors leading out of the hallway. (*Id.*) On the video, Mills stated to the officers that he told Coulter that he wanted to leave, but that Coulter would not permit him to do so. (*Id.* at 0:10-0:18.) In view of these circumstances, no reasonable person could conclude that Mills was "free to leave." *See United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").

As PPE and Coulter deprived Mills of his liberty and had no legal justification for doing so, they falsely imprisoned him, and Mills is entitled to summary judgment on this Count. Accordingly, Mills' Motion will be GRANTED IN PART, and summary judgment

will be ENTERED in his favor on his false imprisonment claims (Count IV) against defendants PPE and Coulter. As this case will proceed to trial on Counts I, II, and III, and Mills has only moved for summary judgment as to liability, this Court will address Mills' entitlement to damages under Count IV after trial.[7]

## CONCLUSION

For the reasons stated above, plaintiff Justin Mills' Motion for Partial Summary Judgment (ECF No. 113) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to defendants PPE Casino Resorts Maryland, LLC ("PPE") and Coulter's false imprisonment liability (Count IV), and it is DENIED as to defendants' § 1983 liability (Count I). Summary judgment shall be ENTERED in favor of Mills on Count IV (False Arrest/Imprisonment). In addition, defendants Bilter and Shapelow's Motion for Summary Judgment (ECF No. 122) is DENIED. Finally, defendants' PPE and Coulter's Motion for Partial Summary Judgment (ECF No. 123) is DENIED IN PART.

Based on the foregoing and the prior decisions of this Court, the following claims shall proceed to trial beginning on September 5, 2017: Count I (§ 1983 liability – Bilter, Shapelow, PPE, Coulter); Count II (Negligence – PPE and Coulter); Count III (Assault – PPE and Coulter).

A separate Order follows.

Dated: July 10, 2017    \_\_\_/s/_____
Richard D. Bennett
United States District Judge

---

[7] A determination of damages will await the jury verdict on Counts I, II, and III.